FOSS v. BAKER, Trustee.

In an action by a servant against his master for injuries sustained in conse-
quence of the latter's negligence, there is no presumption of negligence
from the fact that the accident happened.

Negligence in the defendants is not to be presumed as matter of law, or
as a fact, by proof that the plaintiff, while in the employment of the
defendants (a Shaker family) as head-farmer, by direction of their gen-
eral agent, entered the wheel-pit of their pail-factory to remove obstruc-
tions therein; that the wheel was raised eight or nine inches by a prop
placed under the gearing on the floor above, which the agent promised
to keep in place; and that, while at work in the wheel-pit, the plaintiff
put his hands upon the wheel, causing it to turn a little, and it came
down on his fingers and injured him.

62   247
67   435
67   468
68   163
62   247
71   297
71   307
71   310
62   247
74   136

CASE, for personal injuries, against the defendant Baker, as
trustee of the South Family of Shakers in Enfield.  The plaintiff,
at the time of his injury, was in the employment of the defendants
as head farmer, but was injured while engaged in removing obstruc-
tions from the wheel in the defendants' pail-factory.

His testimony (which comprised all the evidence upon the ques-
tion of negligence) was substantially as follows: "I saw Elder
Timothy Randlet on the day of the accident, about 6:30 in the
morning.  He said there was trouble with the penstock, and
asked if I could fix it.  I said Yes, and went with him to the pail-
factory.  The penstock conveys water from the reservoir to the
factory; is some twenty inches in diameter, and eight to ten rods
long, and is made of planks.  I finished the repairs on the pen-
stock about nine that forenoon, but the wheel did n't start.  The
elder said we must get out the clubs in it.  The wheel was in the
basement.  I put a prop under the gearing on the floor above, one
end resting on the floor.  I raised the wheel some eight or nine
inches by means of the prop.  Elder Timothy said he would keep
it in place.  Nothing was put against the prop at the bottom to
keep it in place.  I supposed Timothy would hold it with a bar.
I knew it was liable to slip unless he kept it in place.  I went
down into the wheel-pit and worked some two hours on the wheel
in the forenoon.  I asked Timothy several times if the prop was
all right, and he said Yea.  In the afternoon I went down again:
it was very dark.  I put my hands on the wheel, causing it to
turn a little, and it came down on my fingers.  The morning after,
Timothy said he was all to blame for taking me away from my
work; that he had no right to do it, and was very sorry.  I told
him I did not blame him.  I now think he was in fault.  In going
into the wheel-pit I followed orders.  I supposed it was my duty.
Timothy agreed to keep the prop in place, and I relied on his

agreement. I think Timothy was about 70 years old, and as strong as men in general of his age. Hiram Baker (trustee) generally gave me orders. I always conferred with Baker about the work when he was at home; when he was absent I did as I pleased. He was not at home when the accident happened. I do n't know who had charge of the pail-factory. On another occasion, Timothy asked me to fix a washing machine. Baker said Yea, and to help him when he asked me, and also the sisters in the office."

The accident happened October 2, 1877, and the plaintiff remained at the defendants' some four weeks. The family took care of him without charge, and paid for his medical attendance. He first claimed damages in the spring or summer of 1880.

In November, 1877, Baker settled accounts with the plaintiff, and paid him the balance due. The following receipt was written by Baker, and signed by the plaintiff: " Rec'd of Hiram Baker one dollar in full of all demands to date. Nov. 30, 1877." The receipt was read to the plaintiff before he signed it, but at this time it had not occurred to him that he had any claim for injuries.

At the close of the testimony for the plaintiff, the presiding justice stated to counsel that in his opinion the action could not be maintained, and thereupon the plaintiff offered to show by another witness that Randlet said in her presence he ought not to have taken the plaintiff away from his work, and was blamable for doing so. The evidence was excluded, and the plaintiff excepted.

The court ordered a nonsuit, and the plaintiff excepted.

*J. L. Spring ( W. H. Powers*, of Massachusetts, with him), for the plaintiff.

*Bingham, Mitchells & Batchellor, Bingham, Aldrich & Remich*, and *C. A. Dole*, for the defendants.

SMITH, J. The plaintiff claims to recover upon the ground of the defendants' negligence. He contends that Randlet was their agent, either by reason of his office as elder, or because the defendants are a partnership, or because he was authorized to act as agent by Baker, the defendants' trustee. The defendants deny that Randlet was their agent. They also deny that he was guilty of any negligence, but claim if there was negligence that it was the negligence of a fellow-servant in the course of a common employment.

It is unnecessary to inquire in what capacity Randlet was acting at the time of the accident. The most favorable view for the plaintiff is that which regards him as the general agent of the defendants. The question then is, whether there was any evidence of negligence to be submitted to the jury. The only evidence upon this point was the fact that the accident happened. The question is one of presumption in the law of evidence, and

the accident was not, in itself, evidence of negligence. The burden of proof is upon the plaintiff. It is not enough to prove that he has suffered injury by the act of the defendants, for the accident is not of that class where the maxim *res ipsa loquitur* applies, nor where the presumption is that the defendants did not discharge all the obligations resting upon them. *Paine* v. *Grand Trunk Railway*, 58 N. H. 611, 613. "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." *Scott* v. *London Docks Co.*, 3 H. & C. 596 ;—see, also, *Kearney* v. *London etc. R. R. Co.*, L. R. 5 Q. B. 411—*S. C.*, L. R. 6 Q. B. 759 ; *Byrne* v. *Boadle*, 2 H. & C. 722 ; *Mullen* v. *St. John*, 57 N. Y. 567 ; *Gee* v. *Metropolitan Railway Co.*, L. R. 8 Q. B. 161 ; Shear. & Red. Neg., *s.* 13.

In *Transportation Co.* v. *Downer*, 11 Wall. 129, the facts were,—The plaintiffs' propeller got aground in the harbor of Chicago, and, the hold filling with water, the defendant's coffee in bags was damaged. The bill of lading exempted the plaintiffs from liability from losses occasioned by the dangers of navigation on the lakes and rivers. The defendant claimed and undertook to prove that the loss might have been prevented by the exercise of proper care and skill. It was held that the burden of establishing such negligence rested with the defendant (original plaintiff), and that it was error to instruct the jury that it was the duty of the plaintiffs (original defendants) to show that they had not been guilty of negligence. The court said,—"There was no presumption, from the simple fact of a loss occurring in this way, that there was any negligence on the part of the company. A presumption of negligence from the simple occurrence of an accident seldom arises, except where the accident proceeds from an act of such a character that, where due care is taken in its performance, no injury ordinarily ensues from it in similar cases, or where it is caused by the mismanagement or misconstruction of a thing over which the defendant has immediate control, and for the management or construction of which he is responsible."

In the absence of any statute making railroad corporations liable for damages by fire communicated from their locomotives, the fact that the plaintiff's property has been injured by fire communicated in this way, it has been held in some jurisdictions, does not raise the presumption of negligence. Pierce Railroads 437, and cases cited. So the owner of land may burn the brush and wood thereon for the purpose of bringing the land into cultivation, and is not liable for injuries caused to his neighbors thereby without proof of some other act or default, or some other circumstance

making the act itself negligent. Shear. & Red. Neg., *s.* 329, and cases cited.

In *White* v. *Concord R. R.,* 30 N. H. 188, 207, this court remarked,—" We take the law to ,be, that if a party shows himself to be in the rightful exercise of his property or privileges, and while so exercising them an injury or damage is done to his person or property by another, such injury is not presumed to be accidental or excusable, but the injury being shown, the burden of the proof is on the defendant to lay before the jury such circumstances as shall exonerate him from responsibility. The damage being proved, the defendant is answerable for negligence, unless he shows a want of blame on his part. The injury to the property is of itself evidence of negligence." These remarks, so far as they were applicable to the case then under consideration, were correct, for the statute made it the duty of the defendants to construct cattle-passes and crossings for the convenience and safety of landowners, and the plaintiff's colt and cow were killed by the defendants' locomotive while rightfully upon a crossing where the defendants' road divided the plaintiff's pasture. The defendants had the exclusive management of the construction of the crossing and of the running of the trains. The case would seem to come within the maxim, *res ipsa loquitur.* But, as a general proposition of law, the rule there laid down is opposed to the weight of authority. *Paine* v. *Grand Trunk Railway,* 58 N. H. 611, 613.

So negligence need not be shown where a nuisance is established, for no degree of care or diligence exempts him who sets up a nuisance whereby another is injured from the legal necessity to compensate him for the loss or injury he has caused him. *Strawbridge* v. *City of Philadelphia,* 2 Penny. 419.

In *The Nitro-Glycerine Case,* 15 Wall. 524, 537, it is laid down, that where "the gist of the action is the negligence of the defendants, unless that be established they are not liable. The mere fact that injury has been caused is not sufficient to hold them. No one is responsible for injuries resulting from unavoidable accident whilst engaged in a lawful business. A party charging negligence as a ground of action must prove it. He must show that the defendant, by his act or by his omission, has violated some duty incumbent upon him which has caused the injury complained of." So, where the evidence is equally consistent with the absence as with the existence of negligence in the defendant, the plaintiff cannot recover. *Smith* v. *Bank,* 99 Mass. 605; *Cotton* v. *Wood,* 8 C. B. N. S. 568;—and see 1 Hill. Torts, *c.* 3, *ss.* 45, 46; 2 *ib., c.* 29, *ss.* 13, 44; *Losee* v. *Buchanan,* 51 N. Y. 476; *Brown* v. *Collins,* 53 N. H. 442; *Stark* v. *Lancaster,* 57 N. H. 88; *Garland* v. *Towne,* 55 N. H. 55; *Smith* v. *Railroad,* 35 N. H. 362; *Railway* v. *Mowery,* 36 Ohio St. 418; 21 Am. Law Reg. (N. S.) 522, 525–534; *Rose* v. *Company,* 20 Blatchf. 411. There is a class of cases which constitute an apparent exception to the rule, such as

actions against a carrier, an inn-keeper, a depositary, etc. But these are not a real exception. The defendant in such cases is under a positive obligation to deliver safely the thing committed to him or perform the carriage of the passenger, except under special circumstances beyond his control. His failure puts him *prima facie* in the wrong, and it is for him to prove the exceptional circumstances which excuse him. Shear. & Red. Neg, *s.* 12;—and see *Paine* v. *Railway*, 58 N. H. 611, 613.

We do not see in the facts reported in this case any evidence tending to show negligence in Randlet. The wheel was raised eight or nine inches by means of a prop placed under the gearing on the floor above the wheel-pit, which Randlet undertook to keep in place with a bar. The plaintiff knew it was liable to slip unless kept in place, and with this knowledge undertook to fix the wheel-pit. He put his hands on the wheel, causing it to turn a little, and it came down on his fingers. There is nothing to show that Randlet did not hold the prop as he undertook to do: on the other hand, the evidence tends to show that the falling of the wheel was caused by the plaintiff's placing his hands upon it, causing it to turn. A master is bound to take reasonable precautions to insure his servant's safety. But where the servant, knowing the dangerous character of the employment, is injured therein, the master is not liable. Underhill Torts (Moak's ed.) 56, 57. A contract is implied, on the part of the servant, that he assumes the apparent risks as well as those generally incident and ordinarily and reasonably to be expected in the service. *Fifield* v. *Northern R. R.*, 42 N. H. 225, 240, and cases cited; *Laning* v. *N. Y. C. R. R.*, 49 N. Y. 521. The authorities in support of this proposition are too numerous to be cited in detail.

The plaintiff was of sufficient age and intelligence to understand the nature of the risk to which he was exposed. He had full notice of the dangerous nature of the service which he undertook. It does not appear that any information as to the nature of the risk or danger of the service was withheld from him, or that the defendants were possessed of any information which he did not have as to the character of the service. If, under such circumstances, he chose to contract to do the work, then he assumed the risk which was within the scope of his employment, and the defendants were under no obligation to indemnify him against the consequences. *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572, 585, 586.

The evidence which was rejected, if received, would not have changed the result. It was merely cumulative. There being no evidence of negligence in the defendants, the nonsuit was properly ordered.

*Exceptions overruled.*

BLODGETT, J., did not sit: the others concurred.